IN THE INTEREST OF J.T.
No. 28019
Intermediate Court of Appeals of Hawaii.
May 29, 2008.
On the briefs:
Dean T. Nagamine, for Mother-Appellant.
Patrick A. Pascual, Mary Anne Magnier, Deputy Attorneys General, State of Hawaii', for Department of Human Services-Appellee.

SUMMARY DISPOSITION ORDER
FOLEY, Presiding Judge, NAKAMURA, and FUJISE, JJ.
Mother-Appellant (Mother), the mother of J.T. (Child), appeals from 1) the Order Awarding Permanent Custody and 2) the Orders Concerning Child Protective Act, which were filed respectively on May 8, 2006 and June 5, 2006, in the Family Court of the First Circuit (family court).[1] The Order Awarding Permanent Custody terminated the parental rights of Mother and Child's Father (Father) and awarded permanent custody of Child to the Department of Human Services (DHS).[2] The Orders Concerning Child Protective Act denied Mother's and Father's motions for reconsideration of the Order Awarding Permanent Custody. In terminating Mother's parental rights and awarding permanent custody of Child to the DHS, the family court found the assessment and opinion of DHS social worker Laura Bailey Sato to be more reliable and credible than that of Mother's therapist, Dr. Heidi Kiyota, Ph.D.
On appeal, Mother argues that: 1) the family court erred in issuing its Order Awarding Permanent Custody because there was insufficient evidence to prove that Mother was unable or unwilling to provide a safe family home for Child; 2) the DHS should be bound by the opinions of Dr. Kiyota because Mother was required to participate in therapy with Dr. Kiyota by DHS service plans ordered by the family court; and 3) alternatively, if Dr. Kiyota's treatment was incomplete and her opinions were not credible, then the DHS services plans which required Mother to treat with Dr. Kiyota were not fair, appropriate, and comprehensive. Mother challenges numerous findings of fact and conclusions of law made by the family court in support of its decision. We conclude that Mother's arguments are without merit and affirm the family court's decision to terminate Mother's parental rights and award permanent custody of Child to the DHS.

I.
Mother was born in the Philippines and immigrated to the continental United States when she was ten years old. Child was born to Mother and Father in 1997, when Mother was sixteen years old. Mother and Father did not marry. Mother married another man (Stepfather) and together they had a son (Stepbrother). In 2000, Mother and Stepfather moved their family to Hawaii. In 2002, Mother and Stepfather divorced and Stepfather subsequently remarried.
In November 2001, the DHS assumed foster custody of Child and Stepbrother (collectively, "the Children") based on allegations that Mother had neglected the Children by leaving them with a babysitter for weeks at a time, often without contacting the babysitter, and throwing wild parties at the family home with the Children present. Mother and Stepfather were separated at that time. An inspection of Mother's home revealed that it was dirty and unsanitary. Mother stipulated to the award of temporary foster custody to the DHS over the Children.
On September 30, 2002, the Children were returned to Mother's care. On March 19, 2003, the DHS resumed custody over the Children because Mother had reverted to neglecting the Children by leaving them with the babysitter for inappropriately long periods of time. On that date, the babysitter reported to the DHS that for the past forty-eight hours, Mother had left the Children in the babysitter's care without contacting the babysitter, and that Mother often left the Children with the babysitter for more than twelve hours per day. Mother had moved in with a new boyfriend without informing the DHS. In September 2003, the DHS placed the Children in the custody of Stepfather.
Mother participated in twenty-eight therapy sessions with Dr. Heide Kiyota. After the last session on April 28, 2005, Dr. Kiyota clinically discharged Mother from therapy, finding that Mother did not have a mental health disorder and had fulfilled all of the CPS (Child Protective Services) requirements. Dr. Kiyota opined that Mother had matured and recommended that Mother be reunified with the Children.
On the other hand, DHS social worker Laura Bailey Sato testified at the permanent plan hearing that based on the available information, the DHS did not believe that Mother was presently willing and able to provide Child with a safe family home, nor did the DHS believe that Mother would become willing and able to do so in the reasonably foreseeable future. Ms. Sato expressed concern about Mother's behavior during supervised visits with Child; Mother's numerous and troubled relationships with men and their detrimental impact on Child; and Mother's lack of insight and continuing inability to place the needs of Child above Mother's desire for self-gratification. The guardian ad litem appointed for Child also opined that Mother was incapable of providing a safe family home in the foreseeable future for Child.

II.
Based on a review of the record and the briefs submitted by the parties, we resolve the issues Mother raises on appeal as follows:
1) There was sufficient evidence to support the family court's determination that Mother was unable or unwilling to provide Child with a safe family home. Mother's main argument on appeal is that the family court erred in finding the assessment and opinion of DHS social worker Laura Bailey Sato regarding Mother's inability and unwillingness to provide a safe family home to be more reliable and credible than that of Mother's therapist, Dr. Heidi Kiyota. However, under well-established law, it is the province of the trier of fact, not the appellate courts, to determine the credibility of witnesses and the weight of the evidence. See Fisher v. Fisher, 111 Hawaii 41, 46, 137 P.3d 355, 360 (2006).
Here, giving appropriate deference to the family court's determinations regarding credibility and weight, there was substantial evidence to support the court's finding that Mother was not willing and able to provide Child with a safe family home. See In re Doe, 95 Hawaii 183, 190, 20 P.3d 616, 623 (2001). The same is true of the other findings of fact challenged by Mother on appeal. We likewise find no error in the family court's conclusions of law challenged by Mother.
2. We reject Mother's contention that the DHS was bound to accept Dr. Kiyota's opinion because the DHS required Mother to participate in therapy with Dr. Kiyota. Mother does not cite any pertinent authority to support her contention, and we conclude that it is without merit. The DHS has a duty to consider all relevant information in formulating its recommendation to the family court. See HRS § 587-25 (2006 Repl.) (requiring the court to consider numerous guidelines when determining whether a child's family is willing and able to provide a safe family home). Dr. Kiyota's assessment of Mother was only one component of the available information that the DHS was obligated to consider. See HRS § 587-25(a)(5). We decline to rule that the DHS must always agree with the opinions of therapists that provide treatment through court-ordered service plans.
More importantly, the family court did not err in choosing not to credit Dr. Kiyota's opinion. The family court explained its reasons for disregarding Dr. Kiyota's opinion as follows:
Although Dr. Kiyota opined that Mother had addressed her issues and recommended that Mother be reunified with the Children, the court does not give much weight to her assessment and recommendation and/or finds her assessments and recommendations not to be credible. For example, Dr. Kiyota disputes the findings of Mother's June 4, 2002 psychological evaluation by Dr. Hostetter, specifically the diagnosis of a Personality Disorder because, in Dr. Kiyota's opinion, Mother's personality features could be explained as differences in Mother's Filipino cultural values. However, Dr. Kiyota failed to grasp that Mother's neglect was based on her placing her needs before the needs of her children.[3]
(Footnote not in original.) The court also found that Mother's behavior after being clinically discharged by Dr. Kiyota showed Mother's inability to place Child's needs before Mother's needs and to have empathy with Child's needs and feelings. As noted, we give deference to the family court's assessment of the weight and credibility of the evidence. Fisher 111 Hawaii at 46, 137 P.3d at 360.
3. We reject Mother's alternative argument that if Dr. Kiyota's treatment was incomplete and her opinions were not credible, then the DHS services plans which required Mother to treat with Dr. Kiyota were not fair, appropriate, and comprehensive. Mother's logic is flawed. The family court's decision to not accept the opinion of a court-designated therapist regarding a parent's fitness does not mean that the treatment provided by the therapist was incomplete or deficient. Nor does it mean that service plans which required the parent to utilize the services of the therapist were unfair or defective. Dr. Kiyota treated Mother and provided an opinion regarding Mother's progress to the DHS and the family court. Mother was able to cite Dr. Kiyota's favorable opinion to support Mother's position. The fact that the DHS and the family court chose not to agree with Dr. Kiyota's opinion has no bearing on the validity of Mother's service plans.[4]

III.
We affirm the May 8, 2006, Order Awarding Permanent Custody filed by the family court. We also affirm the family court's June 5, 2006, Orders Concerning Child Protective Act, except for its finding that "Mlle final order is the [family court's) March 24, 2006 `Decision [and) Order.'" See supra note
NOTES
[1] The Honorable Bode A. Uale presided.
[2] By order dated September 22, 2006, this court dismissed Father's appeal from the Order Awarding Permanent Custody for lack of appellate jurisdiction because Father's notice of appeal was untimely.
[3] In her brief, Mother attacks the reasoning used by the DHS (and the family court) in rejecting Dr. Kiyota's opinions. Mother argues, among other things, that:

The DHS rejection of Dr. Kiyota's opinions become even more questionable when one considers that the doctor's conclusions seem sensible, and do not require any convoluted analysis. Dr. Kiyota, after treating [Mother] for two years, concluded that [Mother's] irresponsible behavior was due in large part to her immaturity and cultural unfamiliarity, features which changed over time, and presumably, would change even more as time went by. Dr. Kiyota noted that [Mother] was a sixteen year old Philippine national when she became pregnant with her first child. [Mother] first became involved with the DHS when she was twenty years old. Dr. Kiyota's suggestion that [Mother's] poor parenting may have been due in large part to her being a teenager has a certain wisdom to it. Likewise, that [Mother's] immature, teenage behavior might not be indicative of a personality disorder also seems plausible.
Dr. Kiyota's conclusion that [Mother] would now be capable of being a safe parent would also seem consistent with the common place experience that young adults become better parents as they become older and acquire some modicum of maturity.
[4] The family court denied Mother's motion for reconsideration of the Order Awarding Permanent Custody on the alternative grounds that 1) the reconsideration motion was untimely and 2) that Mother had failed to present any new evidence warranting reconsideration of the court's prior decision. The family court's determination that Mother's reconsideration motion was untimely was based on its finding that the court's March 24, 2006, Decision and Order, and not the May 8, 2006, Order Awarding Permanent Custody, was the "final" order for purposes of appeal. We conclude this finding was wrong because the Order Awarding Permanent Custody was the "final" appealable order. The family court's erroneous finding regarding the "final" appealable order is harmless, however, because the court properly denied Mother's motion for reconsideration on the alternative ground that Mother had failed to present any new evidence to support her motion. The family court included its erroneous finding regarding the "final" appealable order in its Orders Concerning Child Protective Act, which it filed on June 5, 2006.